## CARROLL–THOMSON CO. v. CENTRAL BRASS & FIXTURE CO.

Circuit Court of Appeals, Sixth Circuit. November 8, 1927.

No. 4824.

1. Patents ⊙328—1,378,906, for automobile bumper, held invalid as to claims 1 and 2, and not infringed as to claims 3, 4, and 5.

Simmons patent, No. 1,378,906, for automobile bumper, claims 1 and 2, for a thin ornamental metal covering for the front bar, *held* invalid for lack of invention. Claims 3, 4, and 5 *held* not infringed.

2. Patents ⊙36(2)—Validity cannot be established by utility and public acceptance, where there is no patentable invention.

Utility and general public acceptance cannot establish validity, when patentable invention is plainly lacking.

Appeal from the District Court of the United States for the Eastern Division of the Southern District of Ohio; Benson W. Hough, Judge.

Suit in equity by the Central Brass & Fixture Company against the Carroll-Thomson Company. Decree for complainant, and defendant appeals. Reversed, with directions.

Melville Church, of Washington, D. C. (Clarence B. Des Jardins, of Washington, D. C., on the brief), for appellant.

H. A. Toulmin, of Dayton, Ohio (H. A. Toulmin, Jr., of Dayton, Ohio, on the brief), for appellee.

Before DENISON and KNAPPEN, Circuit Judges.

PER CURIAM. This suit was brought June 30, 1925, for infringement of United States patent to Simmons, No. 1,378,906, May 24, 1921, for automobile bumpers. Plaintiff (Central Brass & Fixture Company) owns the patent by purchase and assignment from Simmons, in 1923. Defendant is an automobile dealer. The bumper in question is manufactured and used by the Chevrolet Company, a constituent of General Motors Corporation, which defends this suit. The District Court held the patent valid and infringed, and entered the usual interlocutory decree for injunction and accounting, from which this appeal is taken on the grounds of invalidity of patent and noninfringement.

[1] The specification recites the fact, as well known, that (apparently referring to the then present art) automobile bumpers are made "of comparatively heavy stock, and in some instances are provided with a separate nickel-plated strip in the form of a reinforcing member, and in other instances the metal bumper itself is nickel-plated for at least a portion of its length." The stated object of the invention is to "provide a thin metallic covering, which can be quickly and easily applied to the front bar of the bumper proper, for the purpose of imparting an ornamental or finished effect to the bumper, and this covering can be of polished metal, nickel plate or enameled as desired." Another expressed object is "to provide a nickel-plated or enameled cover, which can be quickly and easily removed and replaced when desired."

We think claims 1 and 2 void for lack of patentable invention. Claim 1 calls for a bumper "having a sheet metal cover applied to the front member thereof to impart a finish thereto." Claim 2 differs from claim 1 in calling for a detachable connection of the sheet metal cover to the bumper front. The use of a detachable metal strip or cover for ornamental purposes was old, as shown by Matthews, No. 312,877, February 24, 1885, who applied an ornamental sheet metal covering to a cheap foot bar for stoves, thereby decreasing the expense; also by Edsall, No. 358,151, February 22, 1887, who discloses a folding of a sheet metal covering about angle-iron bed rods, characterized as objectionable in appearance, "to render same acceptable in appearance and for retaining the mattress upon the bed bottom," etc.; also by Smith, No. 1,271,786, July 9, 1918, who discloses the application to the top surface of a wooden bumper bar of a thin sheet metal plate, so as to give the bumper "a neat and ornamental appearance resembling that of a highly polished solid metal bar."

While the Matthews and Edsall patents relate to ornamentation in nonanalogous arts, the feature of ornamentation is not without some significance. But, disregarding Matthews and Edsall, the result is the same. The Smith patent relates directly to the automobile bumper art. Simmons is distinguished from Smith, so far as here pertinent, only in the facts (a) that Smith applied his ornamental bar to the top surface of the bumper, while Simmons put his upon the bumper front; and (b) that Smith's bar was reinforcing as well as ornamental, while Simmons made his bar so thin that it had no appreciable reinforcing quality. As stated by plaintiff's expert witness: "The reinforcing or the structural strengthening effect is absent from the Simmons structure. So that it comes down to this: That while in the

prior art it was old, according to the patentee's own admission, to apply a nickel-plated plate for decorative purposes, which plate had reinforcing qualities, Simmons, while retaining the decorative effect of the plate so applied, eliminates its reinforcing quality."

Especially in view of this state of the bumper art, we cannot think mere reduction of the thickness of the ornamental strip, so as to eliminate reinforceability involves patentable invention; and that is all Simmons did, so far as concerns claims 1 and 2.

[2] Nor can we see any patentable difference between putting the ornamental strip on the front, as distinguished from the top of a bumper bar. The Simmons device has utility, especially in cheapening the cost of construction as compared with that of a solid ornamental structure, and the large Chevrolet production indicates favorable public reception. But those considerations cannot prevail where, as here, patentable invention is plainly lacking. Olin v. Timken, 155 U. S. 141, 155, 15 S. Ct. 49, 39 L. Ed. 100; McClain v. Ortmayer, 141 U. S. 419, 429, 12 S. Ct. 76, 35 L. Ed. 800; Gould v. Cincinnati Co. (C. C. A. 6) 194 F. 680, 685; Package Co. v. Johnson Co. (C. C. A. 6) 246 F. at page 602.

As to claims 3, 4 and 5: Claim 3 reads: "The combination with an automobile bumper of a thin sheet metal cover for the front member thereof, the opposite edges of said cover being folded around the opposite edges of the bumper." Claim 4 differs from claim 3 only in substituting for the last element the words "said cover having a rolled-over upper edge and depending tongues along its lower edge for the purpose set forth"; that is to say, rolling the upper edge of the cover over the upper edge of the bumper plate, and folding the depending tongues or teeth around the lower edge of the bumper plate. Claim 5 calls for a thin sheet metal cover "having its upper and lower edges shaped for engagement with the upper and lower edges of said front member whereby said cover can be attached to said front member."

Of these claims it seems enough to say that they plainly are not infringed. Each calls for attaching the ornamental strip by rolling or folding its opposite edges around the opposite edges of the bar. Defendant's strips have not this feature. They are attached to the bumper only by clamps on the face thereof.

The decree of the District Court must be reversed, with directions to dismiss the bill of complaint.